UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                                              )
WEN CHIANG,                                        )
                            Plaintiff                      )
v.                                                              )
                                                              )
VERIZON NEW ENGLAND INC. and         )    Civil Action No. 06ca12144-DPW
VERIZON MASSACHUSETTS INC. (improperly  )
named in the Complaint as a third-party      )
defendant),                                              )
                            Defendants                  )
_____)

## MEMORANDUM IN SUPPORT OF VERIZON NEW ENGLAND'S
## MOTION FOR SUMMARY JUDGMENT

Plaintiff, Wen Chiang ("Chiang"), a serial litigant[1] who paints houses and has never

earned more than $60,000 in his career, alleges that he lost twenty seven million five hundred

thousand dollars ($27,500,000.00) in commissions from an international steel trading deal

because Verizon New England Inc. ("VNE") reported to the credit reporting agencies (the

"CRAs") that Chiang had failed to pay telephone bills totaling $100 and $119.  Chiang also

claims that VNE violated the Fair Debt Collection Practices Act (FDCPA) because a debt

collector referred to VNE as "Verizon Massachusetts" while the debt collector was attempting to

collect Chiang's unpaid balances.  Verizon is entitled to judgment as a matter of law because the

---

[1] Chiang currently has five cases pending in this Court, including claims against Bank of America, Wen Chiang v. Bank of America, U.S. District Court, Civil Action No. 07-cv-11733l ; MBNA, Wen Y. Chiang v. MBNA (A Bank of America Company and FIA Card Services, Inc., U.S. District Court, Civil Action No. 06-cv-12258-PBS; Chas Bank, Wen Chiang v. Chase Bank USA, N.A., U.S. District Court, Civil Action No. 07-cv-11910-NG; Condoleeza Rice, Michael Chertoff and the INS, Wen Y. Chiang v. Lynn Skyreich, Condoleeaaz Rice and Michael Chernoff, U.S. District Court, Civil Action No. 07-10451-NMG, and the Clerk of the Cambridge District Court, Robert Moscow, Wen Chiang v. Robert Moscow, U.S. District Court, Civil Action No. 07-CA-10350-GAO.   A brief search of the dockets of the Cambridge District Court and the Middlesex Superior Court reveals that Chiang has filed more than twenty cases since 2006.

undisputed evidence demonstrates that VNE did not violate the FDCPA and there is <u>no</u> evidence to support Chiang's Fair Credit Reporting Act (FCRA) Claim.

<u>**Facts**</u>[2]

### I. *Background*

Chiang is a residential house painter who has never earned more than $60,000.  <u>SUMF</u>, 1. VNE is a telecommunications company.  <u>Id.</u> ¶ 2.  VNE does business in Massachusetts as "Verizon Massachusetts."[3]  It identifies itself on telephone bills as "Verizon Massachusetts" and makes filings with the Department of Telecommunications and Energy under the name "Verizon Massachusetts."  <u>Id.</u>  At periods during 2006-2007, Chiang had telephone service with VNE.  <u>Id.</u> ¶ 3.

Every single telephone bill VNE sent to Chiang said "services are provided by Verizon Massachusetts."  <u>Id.</u> ¶ 4.  Prior to suing VNE, Chiang had never heard the corporate name of VNE ("Verizon New England Inc.") and believed that his telephone service was provided by a company named "Verizon" or "Verizon Massachusetts."  <u>Id.</u> ¶ 5. Chiang did not know his telephone service was provided by a company whose complete corporate name was "Verizon New England Inc."  <u>Id.</u>

Chiang failed to timely pay his telephone bills.  <u>Id.</u> ¶ 6.  Chiang claims that he did not have to pay his bills because he had a special contract with VNE to pay "not a dime" more than $39.95 per month.[4]  <u>Id.</u>  At some point in the spring of 2006, Chiang switched his telephone

---

[2] The facts herein are cited to VNE's Concise Statement of Undisputed Material Facts, filed simultaneously herewith, and take the format "<u>SUMF</u> ¶ __."

[3] <u>See</u> <u>Boston Edison Co. v. Bedford</u>, 444 Mass. 775, n.2  (2003).

[4] Because the terms, conditions, rates and provisioning of telephone service are regulated by the Department of Telecommunications and Energy, Chiang's claim to have a special contract for individualized rates fails as a matter of law.  <u>Disk 'N' Data, Inc. v. AT&T Communications, Inc.</u>, 415 Mass. 886, 888 (1993); <u>Wilkinson v. New England Tel. & Tel. Co.</u>, 327 Mass. 132, 135 (1951); <u>Lebowitz Jewelers Ltd. v. New England Tel. & Tel. Co.</u>, 24 Mass. App. Ct. 268 (1987).  That issue is currently pending before the Middlesex Superior Court on a Motion for Summary Judgment by VNE in Chiang's state court litigation.

service to Comcast. Id. ¶ 7.  Shortly thereafter, Chiang wrote two demand letters to VNE claiming he was improperly charged for telephone service by VNE after he had switched his telephone service to Comcast.  Id.

In June of 2006, Chiang decided to switch his telephone service back to Verizon.[5] SUMF ¶ 8.  A VNE representative told Chiang that his service would be installed by VNE on July 5, 2006 but the installation was not successfully completed until July 13, 2006.  Id.  Chiang then sued VNE on July 20, 2006 alleging that VNE damaged him by failing to install his service on July 5, 2006.  Id. ¶ 9.  Chiang did not write to VNE to dispute the amount of his bills at any time after he signed up for service in July of 2006.  He believes Verizon should have known that he disputed all charges in excess of $39.95 between July and December of 2006 because he sued VNE in July 2006 for not installing his service quickly enough.  Id. ¶ 10.

In late December of 2006, after providing notice to Chiang, VNE suspended Chiang's telephone service because his accounts were delinquent.  SUMF ¶ 11.  VNE subsequently restored Chiang's regional calling on January 17, 2007 and Chiang transferred both lines to another provider on January 26, 2007.  Id.  On February 12, 2007, Chiang sued VNE for a third time in Middlesex Superior Court alleging that VNE damaged him by suspending his telephone service.  Id. ¶ 12.

*Debt Collection*

The principal purpose of VNE is not the collection of debts.  SUMF ¶ 13. VNE does not regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.  Id. VNE outsources to third-party debt collectors the collection of unpaid telephone bills.  Id. ¶ 14.

---

[5] Chiang filed two lawsuits against Comcast in connection with the service it provided to Chiang.

VNE did not conduct any debt collection activities with respect to Chiang's accounts.  Id. ¶¶ 14-17.  VNE did not send Chiang any debt collection letters nor make any debt collection calls to Chiang.  Id.  All debt collection efforts on Chiang's unpaid final accounts were outsourced by VNE to third party debt collectors.  Id. ¶ 15. Every debt collection call and/or letter Chiang received concerning his VNE accounts came from third party debt collectors.  Id. ¶¶15 -20.

Chiang received communications from a debt collector and his "credit alert company" identifying "Verizon Massachusetts Inc." as one of his creditors.  Id. ¶¶ 18-20.  He never received a debt collection communication from an entity purporting to be "Verizon Massachusetts" or "Verizon Massachusetts, Inc."  Id. ¶ 18.  Chiang understood when he received the debt collection letters and/or calls identifying "Verizon", "Verizon Massachusetts" and/or "Verizon Massachusetts, Inc." as his creditor that those entities were the same company that provided him telephone service—*not an independent debt collector working for VNE.*  SUMF ¶22.

### Credit Reporting

Chiang obtained copies of his credit reports which indicated overdue accounts with Verizon.  SUMF ¶ 23.  A letter from Equifax identified the creditor as "Verizon Massachusetts Inc."  Id. ¶ 24.  His Experian and Equifax credit reports, however, identified the creditor as "Verizon New England, Inc."  Id.  Chiang sent several demand letters to the CRAs complaining about the negative information from VNE on his credit report.  Id. ¶ 25.  The CRAs responded to Chiang indicating that VNE had confirmed the negative information.  Id. ¶ 26.

*Chiang's Alleged Damages*

Chiang claims that he lost $27,500,000 in profits from a $205,800,000 steel trading transaction because of VNE's negative information on his credit report.[6]  SUMF ¶ 28.  More specifically, Chiang claims that he was unable to obtain a $500,000 personal loan to enable his family business to consummate the $205,800,000 deal *solely* because of the negative information on his credit report concerning his telephone accounts with VNE's.  Id.

With regard to the *alleged* steel trading contracts, Chiang has refused to produce documentation about the deals. Chiang also refused, at the instruction of his counsel, to testify about his anticipated commissions from these purported deals.  Id. 30.  His deposition testimony demonstrates without doubt that his expected commission is entirely speculative.  Id.

With regard to the financing he claims he was unable to obtain, all the evidence Chiang has to support his claim is hearsay.  Chiang testified, that several financial institutions and a "banker" told him that they were denying his credit applications solely because of the negative VNE credit mark.  SUMF, ¶¶ 31 -32. After his deposition, however, Chiang produced letters from financial institutions indicating that they had denied his credit applications for a host of reasons other than his delinquent VNE accounts.  **None** of the letters mentions Chiang's VNE accounts and, in any event, all such evidence is hearsay.  Id. ¶ 32.

In further support of his claim that VNE was the sole cause of his inability to obtain financing for steel trading transaction, Chiang testified at his deposition that the **only** negative mark he has **ever** had on his credit report was from VNE and that his credit was otherwise "excellent." Id. ¶33.  Notwithstanding Chiang's sworn deposition testimony, Chiang has filed three separate lawsuits against MBNA, Bank of America and Chase Bank claiming in each case

---

[6] In his Answers to Interrogatories, Chiang stated that he lost "about $80M."  At his deposition, he testified that the amount was actually $8,000,000.  Then, after his deposition and after the close of discovery, Chiang produced his "initial" disclosures in which he computed his damages at $27,500,000.  SUMF, ¶29.

that they illegally reported negative credit information to the CRAs, damaged his credit rating and undermined his ability to consummate his "multimillion dollar contracts." Id. ¶¶ 34-35.  He has also sued his purported business partner claiming that he lost his international trading contracts when the business partner reneged on his agreement to fund the transaction.   Id.

**Argument**

**I.    CHIANG'S FAIR DEBT COLLECTION PRACTICES ACT CLAIM MUST FAIL BECAUSE VNE IS NOT A "DEBT COLLECTOR" AND DID NOT OTHERWISE VIOLATE THE ACT**.

**A.    The FDCPA Does Not Apply to VNE Because VNE is Not a "Debt Collector."**

VNE cannot be held liable under the FDCPA because it is not a "debt collector" covered by the FDCPA.  The FDCPA only governs the conduct of a "debt collector", which is defined as a person in any business "the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  "The FDCPA applies to people and organizations that collect debts on behalf of others.  The statutory language, legislative history, and court interpretation all consistently illustrate that it does not apply to creditors collecting their own debts."  Chiang v. MBNA, 06-CV-12258-PBS, 2007 U.S. Dist. LEXIS 61787 (D. Mass. August 22, 2007) (Alexander, M.J.) (and cases cited) (recommendation, subsequently adopted by Judge Saris, that FDCPA claim filed by Wen Chiang be dismissed); 15 U.S.C. §1692(a)(6)(A); Montgomery v. Huntington Bank, 346 F.3d 693, 698-699 (6th Cir. 2003);[7] Pollice v. Nat'l Tax Funding, L.P., 225 F.3d 379, 403-04 (3d Cir. 2000); Transamerica Fin. Servs., Inc. v. Sykes, 171

---

[7] Section 162(A)(6)(b), further provides that, "The term 'debt collector' does not include any person while acting as a debt collector for another person both of whom are related by common ownership or affiliated by common control." To the extent Chiang attempts to claim that Verizon Massachusetts was collecting a debt for Verizon New England, those entities (which are one in the same) are related by common ownership and control and are thus exempt from Chiang's claims.

F.3d 553, 554 n. 1 (7th Cir. 1999); <u>Stafford v. Cross Country Bank</u>, 262 F. Supp. 2d 776, 794

(W.D. Ky. 2003);

It is undisputed that VNE is the company that provided telephone service to Chiang and

billed him for those services.  Chiang does not claim, nor is there any evidence, that VNE

attempted to collect any debt on behalf of an unrelated entity or that it regularly does so.  **Indeed,**

**VNE never attempted to collect Chiang's debt, but rather outsourced that function to debt**

**collection agencies.**  VNE is thus a creditor, not a debt collector, for purposes of the FDCPA and

is not subject to liability.  <u>See</u> <u>id.</u>; 15 U.S.C. §1692a(4) ("The term "creditor" means any person

who offers or extends credit creating a debt or to whom a debt is owed . . . .").  Accordingly,

Chiang's FDCPA claim against VNE must be dismissed.

    1.    <u>VNE Did Not Seek to Collect Chiang's Debt Under A Name Other Than</u>
            <u>Its Own and Therefore Is Not Subject to The FDCPA.</u>

Chiang saved his FDCPA claim from the guillotine of Rule 12(b)(6) by submitting an

affidavit claiming that VNE deceptively tried to collect Chiang's debt by using the name of an

unrelated third-party debt collector while attempting collecting Chiang's debt.  Chiang asserted:

> I was confused when I received notice from a collection agency
> and my credit alert company that 'Verizon Massachusetts, Inc.' of
> Columbus Ohio was claiming that I owed $100.00 on the account
> for one line and $119.00 on the account for another line.  I thought
> that "Verizon Massachusetts, Inc." was a separate corporation in
> Ohio that was collecting debts for Verizon New England…

Through that affidavit, Chiang argued that his claim falls within a narrow exception to

the general rule that creditors cannot be held liable under the FDCPA.  That exception extends

the FDCPA's coverage to:

> any creditor who, in the process of collecting his own debts, uses
> any name other than his own which would indicate that a third
> person is collecting or attempting to collect such debts.

15 U.S.C. § 1692(a)(6).  This provision was intended to address the practice of "flat-rating",

which one court has described as follows:

> A flat-rater is one who sells to creditors "dunning letters" bearing the letterhead of the flat-rater's collection agency and extorting the debtor to pay the creditor at once.  The flat-rater merely sells the dunning letters and is not in the debt collection business. After purchasing these letters, the creditor sends them to  his debtor in order to give the false impression of the existence of a third party debt collector and to instill a sense of urgency in the debtor.

Orenbuch v. N. Shore Health Sys., 250 F. Supp. 2d 145, 150 (D.N.Y. 2003) (citations omitted);

Gutierrez v. AT&T Broadband, LLC, 382 F.3d 725, 738 (7th Cir. 2004) (§ 1692(a)(6) was

designed to "prohibit[] creditors from using the materials provided by flat-raters to intimidate

their debtors into paying").  The exception applies only where the creditor poses as a debt

collector in order to intimidate the debtor into paying the debt by deceiving the debtor into

believing that a debt collector, as opposed to the creditor itself, is seeking to recover the debt.

E.g. id.; Shula v. Lawent, 359 F.3d 489, 491-92 (7th Cir. 2004); Villarreal v. Snow, 1996 U.S.

Dist. LEXIS 11930, 1996 WL 473386, at *3 (N.D. Ill. Aug. 19, 1996) ("a creditor does not fall

within the 'used a name other than its own' exception unless the creditor actually pretends to be

someone else or uses a pseudonym or alias.").

   Chiang's claim that VNE can be held liable because it pretended to be a debt collector to

intimidate him into paying his phone bill is frivolous in all respects.  Chiang's FDCPA claim

must be dismissed because there are no facts to support any of the three elements of this claim:

that VNE "(1) in the process of collecting its own debts, (2) used a name other than its own, (3)

which would indicate that a third party was attempting to collect [Chiang's] debts."  Gutierrez,

382 F.3d at 738.

2.      VNE Did Not Use a Name Other Than Its Own.

VNE cannot be held liable for using the name "Verizon Massachusetts, Inc." during the debt collection process because the undisputed evidence demonstrates that a debt collector—*not VNE*—identified "Verizon Massachusetts, Inc." as Chiang's creditor during the debt collection process.  VNE never engaged in debt collection activities and never used the name "Verizon Massachusetts, Inc." while attempting to collect Chiang's debt.  Indeed, Chiang flatly admits that he never received a communication from an entity purporting to be "Verizon Massachusetts, Inc."  VNE cannot be considered a "debt collector" under the FDCPA because it did not misrepresent its identity to Chiang at any point during the collections process.  See id.

Moreover, there is no evidence that VNE used "any name other than its own."   It is well established that  "a creditor need not use its full business name or its name of incorporation to avoid FDCPA coverage . . . ."  Maguire v. Citicorp Retail Servs., Inc., 147 F.3d 232, 235 (2d Cir. 1998).  To the contrary, a creditor that uses the "name under which it usually transacts business, . . . a commonly-used acronym" or "any name that it has used from the inception of the credit relation" will be treated as having used its own name for purposes of the FDCPA.  See id.; Gutierrez, 382 F.3d at 738-739 (holding that a company that consistently did business under a name differing from its incorporated name was not subject to the FDCPA when it collected a debt under the name in which it regularly did business); Dickenson v. Townside T.V. & Appliance, Inc., 770 F. Supp. 1122, 1128 (D. W. Va. 1990) ("a creditor may use any established name under which it is known, to collect its debts from a particular debtor as long it has consistently dealt with such debtor since the beginning of the credit relationship at issue under such name"); Federal Trade Commission Statements of General Policy or Interpretation Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097, 50107 (1988).

The names which Chiang claims confused him – "Verizon" and "Verizon Massachusetts" – are VNE's own names under this standard. Verizon New England Inc. does business in Massachusetts as "Verizon Massachusetts", it identifies itself on <u>all</u> telephone bills as "Verizon" and "Verizon Massachusetts" and it submits filings with the Department of Telecommunications and Cable (formerly the Department of Telecommunications and Energy) under the name "Verizon Massachusetts." Most importantly, Chiang admits that every single telephone bill he received identified VNE as "Verizon" and "Verizon Massachusetts." The use of the name Verizon Massachusetts by debt collectors and Chiang's "credit alert company" during the collections process cannot, as a matter of law, transform VNE into a debt collector. See id.

> 3. <u>The Use of the Name "Verizon Massachusetts" Did Not Deceive Chiang and Could Not Have Deceived Anyone Into Believing That Verizon Massachusetts Was A Debt Collector Seeking to Collect a Debt for VNE.</u>

Chiang's assertion that he was confused by the use of the name "Verizon Massachusetts" and believed that Verizon Massachusetts was a debt collector for VNE does not save his claim: it is ridiculous on its face and is directly contradicted by his deposition testimony and an affidavit filed in state court. The touchstone of liability under the 'used a name other than its own' exception is whether the creditor actually deceived the consumer into believing that a debt collector, as opposed to the creditor itself, was attempting to collect the debt. <u>Gutierrez</u>, 382 F.3d at 739 ("the FDCPA's focus is not on whether the name used by the creditor is permitted by law, but on whether the name used results in the debtor's deception in terms of what entity is trying to collect his debt."); <u>Maguire</u>, 147 F.3d at 235 ("The triggering of the FDCPA does not depend on whether a third party is in fact involved in the collection of a debt, but rather whether a least sophisticated consumer would have the false impression that a third party was collecting the debt."); <u>Dickenson</u>, 770 F. Supp. at 1128 ("it must be remembered that the FDCPA extends

the term "debt collector" not to a "creditor who, in the process of collecting his own debts, uses any name other than his own," but to a "creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts."); Villarreal, 1996 U.S. Dist. LEXIS 11930, 1996 WL 473386, at *3 (N.D. Ill. Aug. 19, 1996) ("a creditor does not fall within the 'used a name other than its own' exception unless the creditor actually pretends to be someone else….").  The standard also includes an objective component:  whether the least sophisticated consumer would have been deceived.  Id.

Thus, in order to succeed on this theory, Chiang must prove that (1) he was actually deceived by the creditor's use of a different name while collecting a debt, and (2) that "under the least sophisticated consumer standard, a consumer would be deceived into believing that the [communication] at issue was not from [the creditor], but was from an unrelated third party . . . ." Maguire, 147 F.3d at 236. Chiang cannot meet his burden under either standard.

a.      <u>Chiang Was Not Deceived by VNE.</u>

Chiang's allegation that he believed Verizon Massachusetts was an independent collection agency working for VNE is directly undermined by his deposition testimony and an affidavit submitted by him in related litigation.  Chiang submitted an affidavit in which he averred that he had never heard of Verizon New England prior to suing and that he knew the company only as "Verizon."  Chiang could not have believed Verizon Massachusetts was a debt collector for VNE because he had never heard the company referred to as Verizon New England. Further, Chiang acknowledged at his deposition that <u>every single</u> telephone bill he received from VNE identified the telephone company as "Verizon" and indicated that his telephone service was "provided by Verizon Massachusetts."  Consistent with those undeniable facts, Chiang testified

that at all times prior to filing suit against VNE, he believed his phone service was provided by a company named either "Verizon" or "Verizon Massachusetts." Whatever Chiang's confusion about the name of the phone company, he **did** **not** believe Verizon Massachusetts was a debt collector for Verizon New England.  He understood perfectly clearly that the company identified as Chiang's creditor was the same company that provided telephone service to him.[8]  Verizon is entitled to summary judgment because it did not mislead Chiang and it did nothing to subject itself to the FDCPA.

    b. <u>The Least Sophisticated Consumer Would Not Have Been<br>Deceived By the Use of Verizon's Trade Name.</u>

   Chiang's claim also fails because no person—not even the least sophisticated consumer—would have believed that "Verizon Massachusetts" was a debt collector seeking to collect a debt on behalf of VNE.  The standard is objective:  "The question [a court] must answer is whether, under the least sophisticated consumer standard, a consumer would be deceived into believing that the [communication] at issue was not from [the creditor], but was from an unrelated third party . . . ."  <u>Maguire</u>, 147 F.3d at 236.  In this case, there is no credible argument that any consumer would be confused by the name "Verizon Massachusetts" during the collections process.  The inclusion of the word "Verizon" in "Verizon Massachusetts" readily identifies the phone company as the creditor as opposed to an unrelated collection agency.  Moreover, VNE identified itself *on every single telephone bill* as "Verizon Massachusetts."  Under these circumstances, no person would have believed that Verizon Massachusetts was a

---

[8] Chiang's prior submission to this Court, in which he stated that he believed Verizon Massachusetts was a debt collector seeking to collect a debt for Verizon New England Inc., appears to have been an intentional misrepresentation aimed only at avoiding dismissal when it was plainly warranted. The federal courts have repeatedly stated that they will not "countenance lawsuits based on frivolous misinterpretations or nonsensical assertions of being led astray." <u>Fed. Home Loan Mortg. Corp. v. Lamar</u>, 503 F.3d 504, 514 (6th Cir. 2007) (and cases cited).  Further, Chiang and his counsel have been warned about making frivolous submissions in this Court. <u>See</u> <u>Wen Y. Chiang v. MBNA (A Bank of America Company and FIA Card Services, Inc.</u>, U.S. District Court, Civil Action No. 06-cv-12258-PBS.

collection agency seeking to collect a debt for Verizon New England.  E.g. Gutierrez, 382 F.3d at

739 (Where "LaSalle Telecommunications, Inc."  and "Communications and Cable of Chicago,

Inc." jointly did business together with a consumer as "AT&T Cable Services", they were not

liable to consumer under the FDCPA when they attempted to collect a debt from the consumer as

"AT&T Cable Services" because there could be no confusion as to the identity of the creditor);

Young v. Lehigh Corp., 1989 U.S. Dist. LEXIS 11575 *73, No. 80 C4376, 1989 WL 117960, at

*22 (N.D. Ill. 1989); Wolfe v. Bank One Corp., 433 F. Supp. 2d 845, 847 (N.D. Ohio 2005)

(holding that a creditor does not become subject to the FDCPA by "merely using the name under

which it had consistently done business with [the debtor]."); Dickenson, 770 F. Supp. 1122, 1128

(D. W. Va. 1990) ("Townside T.V. & Appliance, Inc." not liable where it did business as

"National TV & Appliance" and sent collection letters to the consumer in the name of "National

TV & Appliance").

        4.     <u>Verizon Outsourced the Collection of Chiang's Debt Insulating it From
Liability Under the FDCPA.</u>

      Chiang's FDCPA claim also fails because the undisputed evidence demonstrates that

VNE **<u>did not</u>** engage in the collection of Chiang's unpaid telephone bills.  VNE outsourced its

debt collection efforts to third-party Outside Collection Agencies ("OCAs"); all collection efforts

were handled by OCAs unrelated to VNE.  Simply put, VNE was not in the process of collecting

Chiang's debt when he received collection letters identifying "Verizon Massachusetts, Inc." as

his creditor.   *All* of the purportedly deceptive references to "Verizon Massachusetts, Inc."

occurred *after* VNE sent Chiang's debt to OCAs.  Indeed, Chiang concedes that his debt had

already been submitted to a "collection agency" when he first observed the name "Verizon

Massachusetts, Inc."  Accordingly, Verizon cannot be held liable as a 'debt collector' under the

FDCPA.  Gutierrez, 382 F.3d at 738-739 ("We can easily dispense with any claim that Chicago

Cable's actions after Rydel's account had been referred to [a collection agency] for collection qualifies it for the § 1692a(6) exception. At that point, Chicago Cable was no longer in the process of collecting its own debts; that work was the responsibility of [the collection agency], an undisputed debt collector.").

    **B.**    <u>**Verizon Did Not Violate the FDCPA.**</u>

In addition to the fact that Chiang cannot sustain his claim that Verizon is a "debt collector" subject to the FDCPA, he has also failed to adduce any evidence that Verizon violated the FDCPA in any way. Accordingly, his claims under the FDCPA must be dismissed.

Chiang alleges in the Second Amended Complaint that Verizon has "been operating in a manner that violates . . . 15 U.S.C. § 1692d, §1692e and §1692g. Chiang's allegations are just that: allegations. Despite VNE's discovery requests, Chiang has adduced <u>no evidence</u> to support these claims.

    1.    <u>Verizon Did Not Violate 15 U.S.C. §1692d.</u>

Verizon cannot be held liable for the alleged FDCPA violations because VNE did not engage in debt collection activities. <u>All</u> debt collection activities with respect to Chiang's unpaid balances were conducted by independent OCAs for whose conduct Verizon is not vicariously liable. <u>Wadlington v. Credit Acceptance Corp.</u>, 76 F.3d 103, 108 (6th Cir. 1996) (creditor not vicariously liable for FDCPA violations of a debt collector). Chiang's claims are based solely on the alleged actions of various debt collectors, not VNE. Accordingly, Verizon is entitled to summary judgment.

    2.    <u>Verizon Did Not Violate 15 U.S.C. §1692e.</u>

Chiang claims that Verizon is liable under §1692e because it was identified as "Verizon Massachusetts" in letters from debt collectors and his credit alert company. Verizon cannot be

held liable under this theory, however, because Verizon did not make these statements to Chiang; each of the representations upon which Chiang's relies were made by third parties for whose conduct Verizon bears no responsibility.  Further, as discussed above, the least sophisticated consumer could not have been misled by the appearance of the name "Verizon Massachusetts" where the phone company had <u>always</u> done business under that name.  Under these circumstances, Verizon cannot be held liable to Chiang.  <u>See</u> <u>Gutierrez</u>, 382 F.3d at 739; <u>Dickenson</u>, 770 F. Supp. at 1128.

3.     <u>Verizon Did Not Violate 15 U.S.C. §1692g.</u>

Chiang also claims that Verizon violated §1692g "by failing to send the required written notice to Chiang."  Second Amended Complaint, ¶22. Chiang's claim fails as a matter of law, however, because the notice required by §1692g is required to be provided *by the debt collector* and not the creditor.  15 U.S.C. § 1692g(a).  In this case, various debt collectors—but not VNE—sought to collect Chiang's debt to VNE and VNE is not liable for the failure of the debt collector (if, in fact, there was one[9]) to comply with §1692g.  <u>Davis v. Dillard Nat'l Bank,</u> 2003 U.S. Dist. LEXIS 9420, *11-*12 (D.N.C. 2003).

## II.    VNE IS ENTITLED TO SUMMARY JUDGMENT ON THE FAIR CREDIT REPORTING ACT CLAIM.

Chiang alleges that VNE violated the FCRA by (1) failing to send a collection letter under 15 U.S.C. 1692(g)(4), (2) by reporting Chiang's debts to credit reporting agencies under the name "Verizon Massachusetts", and (3) performing an inadequate investigation about the validity of Chiang's debts in response to a notice of dispute from a CRA.  <u>See</u> <u>Exhibit A</u>- Second Amended Complaint , ¶¶ 11-15.  Verizon is entitled to summary judgment on the FCRA claim because it is without legal or factual support.

---

[9] Chiang produced during discovery *several* letters from debt collectors containing the required disclosures.

**A.**     **There is No Prerequisite for a Collection Letter Prior to Reporting Credit Information.**

Chiang's first claim—that Verizon failed to send a collection letter—is entirely misplaced.  The collection letter requirement is contained in the FDPCA, not the FCRA, and requires that debt collectors send a particularized notice prior to beginning debt collection activities.  See 15 U.S.C. 1692(g)(4).  That requirement has absolutely no relation to the FCRA. Accordingly, VNE is entitled to judgment on Chiang's claim that Verizon violated the FCRA by failing to send him a debt collection letter before reporting his delinquent accounts to the CRAs.

**B.**     **There is No Evidence that Verizon Violated the FCRA by Identifying Itself as Verizon Massachusetts.**

Chiang's claim that VNE violated the FCRA by reporting Chiang's debts under the name "Verizon Massachusetts" is equally without merit.  The FCRA contains no requirement that a furnisher of credit information report to the CRAs using its full corporate name.  Chiang alleges that VNE used the name "Verizon Massachusetts" when furnishing information to the CRAs. Even if this were true, it would not amount to a violation of the FCRA.  In any event, Chiang has no evidence that VNE, in fact, reported to the CRAs that its name was Verizon Massachusetts.[10] Accordingly, VNE is entitled to judgment on this claim.

**C.**     **There is No Evidence That Verizon Violated 15 U.S.C. 1681s-2(b).**

Chiang's claim that VNE violated §1681s-2(b) fails because he has no admissible evidence to support it.  As set forth below, Chiang's FCRA claim relies *exclusively* on Chiang's own baseless allegations and inadmissible hearsay evidence which are insufficient to clear the summary judgment hurdle.  See Rojas-Ithier v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de Puerto Rico, 394 F.3d 40, 42 (1st Cir. 2005) (purpose of summary judgment is

---

[10] In fact, both Experian and Equifax identify the creditor as "Verizon New England Inc."

"to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required."); Cordero-Soto v. Island Finance, Inc., 418 F.3d 114, 119 (1st Cir. 2005) (nonmoving party must present "materials of evidentiary quality"); Horta v. Sullivan, 4 F.3d 2, 8 (1st Cir. 1993) ("Inadmissible evidence may not be considered.").

Chiang alleges that VNE violated §1681s-2(b) by conducting "an unlawful investigation" in response to being notified by the CRAs that Chiang disputed certain information in his credit report.  Second Amended Complaint, ¶15.  In order to succeed on this claim, Chiang must prove each of the elements enumerated in the statute.  Section 1681s-2(b) requires that a furnisher of credit information: (1) upon notice from a CRA that a consumer disputes certain credit information, (2) "conduct an investigation with respect to the disputed information", (3) "review all relevant information provided by the [CRA]," (4) "report the results of the investigation to the [CRA]" and (5) if the investigation finds that the information is incomplete or inaccurate, report those results to all CRAs.  The duty of the furnisher of information to notify the CRAs of an error arises *only* if its investigation uncovers that the information was "incomplete or inaccurate" or cannot be verified.  Id. § 1681s-2(b)(D) & (E).  The FCRA is clear that a furnisher of information <u>cannot</u> be held liable for reporting negative information *unless* it has "specific knowledge, *other than solely allegations by the consumer*, that would cause a reasonable person to have substantial doubts about the accuracy of the information."  Id. § 1681s-2(a) (emphasis added).  Chiang apparently claims that VNE's investigation was deficient *per se* because VNE did not conclude that Chiang was not responsible for paying his telephone bills.

1.      There is No Evidence That the CRAs Reported Chiang's Dispute to VNE.

Chiang has no admissible evidence that any CRA reported to Verizon that Chiang was

disputing information on his credit report.  Chiang has produced letters he sent to the CRAs

complaining about VNE as well as the responses from the CRAs.  Chiang, however, has no

admissible evidence that the CRAs ever conveyed Chiang's disputes to VNE.  The only evidence

that Chiang has in this regard are the letters sent by the CRAs to him indicating that VNE

confirmed the information on Chiang's credit report.  These letters are insufficient to establish

that the CRAs reported Chiang's dispute to VNE, however, because (1) they do not indicate that

any information was, in fact, communicated by the CRAs to VNE and (2) the letters are

inadmissible hearsay insufficient to create a genuine issue of material fact.  Bennett v. Saint-

Gobain Corp., 507 F.3d 23, 29 (1st Cir. 2007) ("[i]t is black-letter law that hearsay evidence

cannot be considered on summary judgment.").  Because Chiang cannot satisfy his burden on

this most basic element of his claim, that the CRAs notified VNE of Chiang's disputes, VNE is

entitled to judgment as a matter of law.  E.g.  Young v. Equifax Credit Info. Servs. Inc., 294 F.3d

631 (5th Cir. 2002); Bank One, N.A. v. Colley, 294 F. Supp. 2d 864, 869 (D. La. 2003); Aklagi v.

Nationscredit Fin. Servs. Corp., 196 F. Supp. 2d 1186, 1193 (D. Kan. 2002).

2.      There Is No Evidence That VNE Did Not Conduct a Reasonable
         Investigation.

There is also no evidence that VNE failed to conduct a reasonable investigation in

response to the information provided to it by the CRAs.  Because Chiang cannot demonstrate

what, if any, information was communicated by the CRAs to VNE concerning Chiang's disputes,

he necessarily cannot meet his burden of proving that VNE failed to reasonably investigate

and/or review the disputed information.  See, e.g., Westra v Credit Control of Pinellas, 409 F.3d

825, 827 (7th Cir. 2005) (allowing summary judgment because plaintiff failed to demonstrate that

furnisher of credit information was provided with the specifics of plaintiff's dispute by CRA and, therefore, could not prove that furnisher's investigation was unreasonable).  Further, there is no evidence in the record about the scope of VNE's investigation and Chiang cannot meet his burden of proving that VNE failed to investigate information provided to it by the CRAs. Chiang cannot simply rely on his claim that he disputed his telephone bill to VNE because the FCRA is clear that a furnisher of credit information investigating the accuracy of credit information need not rely solely on the allegations of the consumer who is disputing the debt.  15 U.S.C. § 1681s-2(a).  Because the record is devoid of any evidence that VNE failed to investigate or conducted an unreasonable investigation, VNE is entitled to judgment as a matter of law.  <u>Westra</u>, 409 F.3d at 827.

       3.    <u>There Is No Evidence That VNE Did Not Report The Results of Its Investigation to the CRAs.</u>

Finally, Chiang cannot prove that VNE did not report the results of its investigation back to the CRAs or that its investigation revealed any errors in the information VNE reported about Chiang.  Put simply: there is no admissible evidence in the record to support this element of Chiang's FCRA claim.  Further, the hearsay letters from the CRAs to Chiang suggest that, in fact, VNE <u>did</u> respond to the CRAs' inquiries and concluded that the negative information was correct.  Accordingly, VNE is entitled to judgment as a matter of law on the FCRA claim because Chiang cannot sustain his burden of proof on this element.

**D.    <u>Chiang Has No Admissible Evidence that He Suffered Any Actual Damages.</u>**

Chiang's FCRA claim also fails because he cannot meet his burden of proving that he suffered any actual damages as a result of the alleged FCRA violation.  <u>E.g.</u> <u>Crabill v. Trans Union, L.L.C.</u>, 259 F.3d 662, 664 (7th Cir. 2001) (Plaintiff in FCRA claims must prove actual damages); <u>Bonacorso Constr. Co. v. Master Builders, Inc.</u>, 1991 U.S. Dist. LEXIS 6057 (D.

Mass. 1991).  Chiang claims that he was unable to obtain a $500,000 personal loan to enable his family business to consummate the $205,800,000 deal from which he was allegedly slated to receive tens of millions of dollars in profits.

Chiang has no admissible evidence to support his damages claim.  Despite Chiang's sworn deposition testimony that VNE was the only negative mark he has ever had on his credit report (SUMF, ¶34) and was the sole cause of inability to obtain a loan, he filed three separate lawsuits against MBNA, Bank of America and Chase Bank claiming that each of those entities improperly reported negative information to the CRAs, damaged his credit report and caused him to lose his international steel trading deals.[11]  Further, the letters he has produced from various banks indicate that the banks denied Chiang's loan applications for a variety of reasons other than his overdue phone bills and, in any event, are inadmissible hearsay.  The only evidence that VNE's negative credit information harmed Chiang consists of his say-so, which is not enough to defeat summary judgment.  Further, Chiang has blocked Verizon's efforts to discover any evidence about the alleged steel trading transactions or his anticipated profits of either $8,000,0000, $80,000,000 or $27,500,000 which are, on their face, are patently specious.  Under the circumstances, Chiang has insufficient evidence to prove any actual damages and, therefore, VNE is entitled to summary judgment.

## III.   VERIZON IS ENTITLED TO SUMMARY JUDGMENT ON COUNT III BECAUSE IT IS DUPLICATIVE.

Count III seeks relief for "Intentional Violation of Statutes."  The Count is entirely duplicative of Counts I and II and, therefore should be dismissed. See Chiang v. MBNA, 2007 U.S. Dist. LEXIS 61787 (D. Mass. 2007).

---

[11] Either Chiang's suits against these other entities are totally baseless or Chiang's deposition testimony was untrue.

## CONCLUSION

VNE is not subject to liability under the FDCPA because it is a creditor, not a debt collector.  Chiang has no evidence to support the theory that VNE falls within the exception to the FDCPA extending liability to creditors who pose as debt collectors while attempting to collect their own debts.  Similarly, there is a total absence of admissible evidence to support any theory of liability against VNE under the FCRA.  Accordingly, VNE respectfully requests that the Court allow this motion and enter judgment in its favor on all Counts.

Respectfully submitted,

**VERIZON NEW ENGLAND, INC.**

By its attorneys,

 /s/ Joshua A. Lewin
William A. Worth, BBO #544086
Joshua A. Lewin, BBO# 658299
PRINCE, LOBEL, GLOVSKY & TYE LLP
100 Cambridge Street, Suite 2200
Boston, MA 02114
Date:  April 9, 2007                    (617) 456-8000

---

**Certificate of Service**

I hereby certify that this document(s) filed through  the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on April 9, 2008.

    /s/ Joshua A. Lewin

---