UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____ )
                                            )
                                            )
WEN CHIANG,                                 )
        Plaintiff                           )
v.                                          )
                                            )
VERIZON NEW ENGLAND INC. and                )   Civil Action No. 06ca12144-DPW
VERIZON MASSACHUSETTS INC. (improperly      )
named in the Complaint as a third-party     )
defendant),                                 )
        Defendants                          )
_____)

**CONCISE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BY VERIZON NEW ENGLAND INC.**

Pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1, Verizon New England Inc, ("VNE") hereby submits this concise statement of material facts as to which VNE contends there is no dispute and upon which VNE is entitled to summary judgment on all claims brought against it by Plaintiff, Wen Chiang ("Chiang").

**Statement of Facts[1]**

*The Parties*

1. Chiang is the President of Thomas & Brothers Construction & Trading Inc., his family residential house painting business, and has never earned more than $59,000 in a single year.

   Exhibit 1 – *Deposition of Wen Y. Chiang (hereinafter W. Chiang Dep.)*, pp. 34, 299, 302.

---

[1] Several of the facts set forth herein are disputed by Verizon, but those disputes are not material for purposes of summary judgment. Accordingly, any disputed facts are set forth in the light most favorable to the Plaintiff.

2. VNE is a telecommunications company. Verizon New England Inc. does business in Massachusetts as "Verizon Massachusetts." It identifies itself on telephone bills as "Verizon Massachusetts" and makes filings with the Department of Telecommunications and Energy under the name "Verizon Massachusetts." See Exhibit 8 – *Affidavit of Carole D. Bickerdyke (*hereinafter *"Bickerdyke Aff."),* ¶¶ 2-3.

### *Chiang's Telephone Service With VNE*

3. At times in 2006 and 2007, Chiang had telephone service with VNE  E.g. Exhibit 2 – *Affidavit of Wen Y. Chiang dated March 23, 2007 (*hereinafter *"Chiang Aff. 3/23/07").*

4. Every single telephone bill VNE sent to Chiang said "services are provided by Verizon Massachusetts." Exhibit 1 – *W. Chiang Dep.*, pp. 177, 195-196, 198-199, 342-345, Exhibit 2 - *Chiang Aff. 3/23/07*, ¶18; Exhibit 17 – *Ex. 2 to the Deposition of Wen Y. Chiang*, (copies of telephone bills), p. 3 of each bill.

5. Prior to suing VNE, Chiang had never heard the name "Verizon New England Inc." In fact, Chiang submitted an affidavit in another case, in support of his Motion to correct the name of the Defendant, in which he stated that *he had never heard of Verizon New England* prior to suing the company. In that affidavit he states:

> When Plaintiff occurs the damage, immediately to request defendant's customer [service] for the actual name of the company, defendant's customer [service] only refer as call Verizon
> Because defendant use the name of "Verizon ", to all their business and sent the billing statement with the name of "Verizon " which this name never register as an corporation name. Defendant further training their employee's not to give their actual name, or the business name…
> Since defendant's now has informed the plaintiff their correct name of Verizon New England Inc. Plaintiff is request the name of defendant shall be correct to Verizon New England

Exhibit 3 - *Affidavit of Support of Motion of Motion to Correct Misnomer of Defendant, dated August 29, 2006 (*hereinafter *"Chiang Aff. 8/2/06"),* ¶¶ 1, 3 & 7.  Chiang believed that his phone service was provided by a company named either "Verizon" or "Verizon Massachusetts."

Exhibit 1 – W. Chiang Dep., pp. 342-351).  In Mr. Chiang's own words:

```
24      Q.    -- did Verizon ever send you
1             anything identifying itself as Verizon New
2             England?
3       A.    No.
4       Q.    No.  It always identified itself
5             either as Verizon or Verizon Massachusetts.
6       A.    Exactly.  Either one.
7       Q.    Okay.  And so when you had your
8             phone service, you thought you had your
9             phone service with either Verizon or
10            Verizon Massachusetts, right?
11      A.    Yes.  It's confusing so I says --
12            confusion.
```

Chiang did not believe or know that his telephone service was provided by VNE.  Id. at p. 347.

6.  Chiang admits that he did not timely pay his telephone bills.  See, e.g. Exhibit 1 - *W. Chiang Dep.* pp. 102-106, 112-114; 154-155; 157; 167; 173-174; 196-197; 215; 220-222.  Chiang claims that he did not have to pay his bills because he had a special contract with VNE to pay not a dime more than $39.95 per month.  Exhibit 1 -*W. Chiang Dep.* pp. 165-166, 171-172.[2]

7.  At some point in 2006, Chiang switched his telephone service to Comcast.  Exhibit 1 - *W. Chiang Dep.*, pp 115-118.  Chiang claims that Verizon billed him for service after Comcast became his service provider.  On May 16, 2006, Chiang wrote two demand

---

[2] Because telephone service is regulated by the Department of Telecommunications and Energy, Chiang's claim to have a special contract for individualized rates fails.  Disk 'N' Data, Inc. v. AT&T Communications, Inc., 415 Mass. 886, 888 (1993); Wilkinson v. New England Tel. & Tel. Co., 327 Mass. 132, 135 (1951); Lebowitz Jewelers Ltd. v. New England Tel. & Tel. Co., 24 Mass. App. Ct. 268 (1987).  That issue is currently pending before the Middlesex Superior Court on a Motion for Summary Judgment by VNE in Chiang's state court litigation.

letters to Verizon New England.  Exhibit 1 - *W. Chiang Dep.*, pp 138-141); Exhibit 4 - *Notices of Demand to Verizon dated May 16, 2006.*  In those letters Chiang claimed he was improperly charged for telephone service by VNE after he had switched his telephone service to Comcast.  See id.; Exhibit 1 - *W. Chiang Dep.,* pp. 312-313.

8. In June of 2006, Chiang decided to switch his telephone service back to Verizon.[3]  Exhibit 1 - *W. Chiang Dep.*, p. 203.; Exhibit 5 – *Plaintiff's Answers to Defendant's First Set of Interrogatories – Cambridge District Court (hereinafter "Ans. to Ints.- Cambridge)*, Answer No. 3.  A VNE representative told Chiang that his service would be installed by VNE on July 5, 2006 but the installation was not successfully completed until July 13, 2006.  Exhibit 5 - *Ans. to Ints. - Cambridge,* Answer No. 3.

9. Chiang filed a lawsuit against VNE on July 20, 2006 alleging that VNE damaged him by failing to install his service on July 4, 2006.  Exhibit 6 – *Complaint and Jury Demand, Cambridge District No. 0652-cv-846.*

10. Chiang did not write to VNE to dispute the amount of his bills at any time after he signed up for service in July of 2006.  Exhibit 1 - *W. Chiang Dep.* pp. 161-162.  He believes Verizon should have known that he disputed all charges in excess of $39.95 between July and December of 2006 because he sued VNE in July 2006 for not installing his service quickly enough.  Exhibit 1 - *W. Chiang Dep.,* pp. 161-162.

11. In late December of 2006, VNE suspended Chiang's telephone service because his accounts were delinquent.  Exhibit 1 - *W. Chiang Dep.,* pp. 311-312.  VNE restored Chiang's regional

---

[3] Chiang has sued Comcast twice in connection with the service it provided to Chiang.  Chiang currently has three cases pending against VNE—two in Middlesex Superior Court and this one.

calling on January 17, 2007 and Chiang transferred both lines to another provider on January 26, 2007.  Exhibit 1 - *W. Chiang Dep.*, p. 311

12. On February 12, 2007, Chiang sued VNE for a third time in Middlesex Superior Court alleging that VNE damaged him by suspending his telephone service for nonpayment in December 2006.  See Exhibit 7 – *Complaint and Jury Demand, Middlesex Superior Court No. 2007-587-B*

### *Debt Collection*

13. VNE is a telecommunications company.  The principal purpose of VNE is not the collection of debts.  VNE does not regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.  Exhibit 8 – *Bickerdyke Aff.,* ¶¶ 2, 5.

14. VNE outsources to third-party debt collectors the collection of debts owed by consumers to VNE. Exhibit 8 – *Bickerdyke Aff.,* ¶ 6.

15. With respect to Chiang's accounts, VNE did not conduct any debt collection activities.  All debt collection efforts on Chiang's accounts were outsourced to third party debt collectors.  Exhibit 8 – *Bickerdyke Aff.,* ¶ 7.

16. VNE did not send Chiang any debt collection letters.  Exhibit 8 – *Bickerdyke Aff.,* ¶8.

17. VNE did not make any debt collection calls to Chiang.  Exhibit 8 – *Bickerdyke Aff.,* ¶9.

18. Chiang never received a debt collection communication from an entity purporting to be "Verizon Massachusetts" or "Verizon Massachusetts, Inc."  Exhibit 18 - *Plaintiff's Answers to Defendant's First Set of Interrogatories – U.S. District Court (hereinafter "Ans. to Ints.- U.S. District)*, Answer No. 7.

19. Chiang received letters and calls from Debt Collectors seeking to collect on Chiang's delinquent accounts.  See Exhibit 19 - *Debt collection notices.*  According to Chiang, some of

the debt collectors said his debt was owed to "Verizon Massachusetts."  <u>Exhibit 18</u> - *Ans. to Ints. - U.S. District),* Answer No. 7.  None of the collection letters produced by Chiang, however, refer to Verizon Massachusetts.  <u>Exhibit 19</u> - *Debt collection notices.*

20. Chiang received a credit report and a document from his "credit alert company" identifying "Verizon Massachusetts Inc." as one of his creditors.  <u>Exhibit 2</u> – *Chiang Aff. 3/23/07, ¶19*; <u>Exhibit 18</u> - *Ans. to Ints. - U.S. District),* Answer No. *7.*

21. In opposition to VNE's Motion to Dismiss, Chiang submitted an affidavit in which he averred as follows:

> I was confused when I received notice from a collection agency and my credit alert company that 'Verizon Massachusetts, Inc.' of Columbus Ohio was claiming that I owed $100.00 on the account for one line and $119.00 on the account for another line.  I thought that "Verizon Massachusetts, Inc." was a separate corporation in Ohio that was collecting debts for Verizon New England…

<u>Exhibit 9</u> - *Affidavit of Wen Y. Chiang dated April 6, 2007*, ¶ 2.

22. Notwithstanding Chiang's affidavit, Chiang testified clearly at his deposition that he understood at the time he received the collection letters and/or calls that "Verizon", "Verizon Massachusetts" and/or "Verizon Massachusetts, Inc." was the same company that provided him telephone service.  <u>Exhibit 1</u> - *W. Chiang Dep.*, pp. 177, 195-196, 198-199, 376-378.  For example, he testified as follows:

```
           23      Q.   So when it says "your client," you
           24           understand that to mean that NCO Financial
            1           -- that NCO Financial's client is the
            2           telephone company.
            3      A.   Telephone company.
            4      Q.   The company that provided telephone
            5           service to you.
            6      A.   Right.
…
           12      Q.   That's to AMO Recoveries.
           13      A.   Right.
           14      Q.   Okay.  Now, again, in the RE line
```

```
15          it says, "Your company account" and then
16          slash, and then it says, "Your client
17          Verizon."
18     A.   (Deponent viewing document).  Yes.
19     Q.   And, again, did you understand that
20          AMO Recoveries' client was the telephone
21          company that provided telephone service to
22          you?
23     A.   Yes.  It's the same we just discuss
24          as the one before.  And this is second
 1          time they send a collection letter so
 2          that's why I call "Final Notice of
 3          Demand."
 4     Q.   Okay.  But my question -- You
 5          understood that -- When you say "your
 6          client Verizon," you understood that AMO
 7          Recoveries' client was the same telephone
 8          company --
 9     A.   Company.
10     Q.   -- that provided telephone
11          service --
12     A.   Service to me.
13     Q.   -- to you.
14     A.   Yes.  That's Verizon or Verizon
15          Massachusetts.
```

### *Credit Reporting*

23. Chiang obtained copies of his credit reports which indicated overdue accounts with Verizon. See Exhibit 2 – *Chiang Aff. 3/23/07,* ¶¶ 19, 20; Exhibit 20 – *Copies of all portions of Credit Reports which were produced by Plaintiff (Equifax and TransUnion).*

24. A letter from Equifax, identified the creditor as "Verizon Massachusetts Inc."  See Exhibit 21 – *Letter from Equifax dated March 6, 2007.*  However, Chiang's credit reports from Experian and Equifax identified the creditor as "Verizon New England."  See Exhibit 20 – *Copy of Credit Report from Equifax (p. 7 of 10).*  Similarly, a letter from Experian identified the Creditor as "Verizon New England, Inc."  Exhibit 22 – *Letter from Experian dated March 5, 2007.*

25. Chiang sent several demand letters to the credit reporting agencies "CRAs" about the negative information from Verizon on his credit report.  See Exhibit 10 – *Copies of demand letters sent from Chiang to CRAs.*

26. The CRAs sent letters to Chiang responding to his written complaints.  See Exhibit 11 – *Copies of letters from CRAs to Chiang.*

27. Chiang has produced no other information to support his FCRA claim.  Exhibit 18 - *Ans. to Ints. - U.S. District),* Answer No. 3.

### *Chiang's Damages Claim*

28. Chiang claims that he lost a $205,800,000 steel trading transaction because of VNE's negative information on his credit report.  More specifically, Chiang claims that he was unable to obtain a $500,000 personal loan to enable his family business to consummate the $205,800,000 deal because of VNE's negative information on his credit report.  Exhibit 2 - *Chiang Aff. 3/23/07,* ¶¶16 & 17; Exhibit 1 - *W. Chiang Dep.*, pp. 385-390, 397-402, 448-450.  Chiang claimed originally in his answers to interrogatories that he would have earned "about $80M in profits" from the deal.  Exhibit 18 - *Ans. to Ints. - U.S. District,* Answer No. 14.

29. At his deposition, he testified that his commission would have been $8,000,000 Exhibit 1 - *W. Chiang Dep.* p. 328.  Then after his deposition and after the close of discovery, Chiang produced his "initial" disclosures in which he computed his damages at $27,500,000.  See Exhibit 23- *Plaintiff's Initial Disclosures*.  There is no admissible evidence to support Chiang's damages claims.

30. With regard to these *alleged* contracts, Chiang has refused to produce documentation about these deals.  Exhibit 1 - *W. Chiang Dep.* p. 385.  Chiang also refused, at the instruction of his counsel, to testify about details of his alleged commissions and his deposition testimony

demonstrates without doubt that his expected commission is speculative. Exhibit 1 - *W. Chiang Dep.,* pp. 289-299; 325-327.

31. With regard to the financing he claims he was unable to obtain, Chiang testified, consistent with his March 23 affidavit, that several financial institutions and a "banker" denied his credit applications solely because of the negative VNE credit mark. Exhibit 1 - *W. Chiang Dep.,* pp. 385-390, 397-402, 448-450; Exhibit 2 – *Chiang Aff. 3/23/07,* ¶¶16, 17.

32. After his deposition (and the close of discovery), however, Chiang produced letters from these financial institutions denying his applications for credit. The letters indicate that Chiang's credit applications were denied because he had: "Delinquent Credit History", "High Level of open AND OR unsecured credit balances", "a credit score below our lending policy", "Excessive dept store/Bank card balances at/or near credit limit" and "past and/or present delinquent credit obligations." **None** of the letters mentions Chiang's VNE accounts. See Exhibit 12 - *Copies of letters denying Chiang's applications for credit.*

33. In further support of his claim that VNE was the cause of his inability to obtain financing for steel trading transaction, Chiang testified at his deposition that the **only** negative mark he has **ever** had on his credit report was from VNE and that his credit was otherwise "excellent." Exhibit 1 - *W. Chiang Dep.,* pp 388-390:

```
 6         Q.   Okay.  And then you're testifying
 7         under oath that they told you -- Citizens
 8         Bank told you that they wouldn't give you
 9         a loan because Verizon had a report on
10         your credit report.
11          A.   Right.
12          Q.   And did they say that there were
13         any other negative marks on your credit?
14          A.   No.
15          Q.   Okay.  So that was the only one.
16          A.   That's only one negative.
17          Q.   Okay.
18          A.   And they even say --
```

```
19         Q.   Otherwise, your credit is good.
20         A.   My credit is good.
21         Q.   Excellent?
22         A.   Excellent, yes, because never have
23       any negative wrong things at all, not even
24       delay of payment.
0390
 1         Q.   Okay.  Up until today, you've never
 2       had a negative mark on your credit
 3       report --
 4         A.   No.
 5         Q.   -- other than Verizon.
 6         A.   That's right.  Only one.
 7         Q.   Verizon's the only one.
 8         A.   Yes.  Sorry.  Only one.
```

34. Notwithstanding Chiang's sworn deposition testimony that he has never had a negative mark on his credit report other than from VNE, Chiang has filed three separate lawsuits against MBNA, Bank of America and Chase Bank claiming in each case that they illegally reported negative credit information to the CRAs, wrongfully impaired his credit rating and damaged his family business and its multimillion contracts.  See Exhibit 13 – *Copy of Complaint filed by Chiang against MBNA (hereinafter "Complaint Against MBNA")*; Exhibit 14– *Copy of Complaints filed by Chiang against Bank of America (hereinafter "Complaint Against BOA")*; Exhibit 15 – *Copy of Complaints filed by Chiang against Chase Bank (hereinafter "Complaint Against Chase")*.  In the Complaints he filed in those cases, he states, among other things:

- "MBNA reported the alleged debt to credit reporting agencies, stating that they had closed Chiang's account, causing a negative report on Chiang's file." Exhibit 14 – *Complaint Against BOA,* ¶8.

- "Instead, Chase Bank did not credit Chiang's account but reduced Chiang's credit line and report to credit agencies, that Chiang's credit file, Chase Bank took these action even though on the same month Chiang made a large payment of 1,000.00

       Chase Bank had already reported to the credit bureau and damaged Chiang's credit file by reducing the credit limit and made the report." <u>Exhibit 15</u> – *Amended Complaint Against Chase,* ¶13.

- "Chase took its action after Chiang had paid a large amount and immediately reduced the credit line then reported to the Credit Bureau immediately harming Chiang's credit history." <u>Exhibit 15</u> – *Amended Complaint Against Chase,* ¶19.

- "As a direct result of the action by Chase Bank, Chiang's credit file, was damaged," <u>Exhibit 15</u> – *Amended Complaint Against Chase*, ¶21.

- "defendant sent the inquirers to the credit bureau to report closed my account was delinquency … Plaintiff also received a report from one of the credit alert agencies indicating that Defendant submitted not just report closed account, also include the late payment with delinquency . . .plaintiff's credit already damaged by defendant's earlier action." <u>Exhibit 13</u> - *Complaint Against MBNA,* ¶¶ 4, 5.

- On November 30, 2006, Chiang received an additional report from a credit agency that still contained that negative information submitted by MBNA; <u>Exhibit 13</u>– *Amended Complaint Against MBNA,* ¶8.

35. Chiang's sworn testimony that VNE was the sole cause of his inability to obtain financing for his international trading deals is also directly contradicted by his filings (and sworn affidavits) in other cases.  For example:

- Chiang filed a Verified Complaint against Eugene Chen and Jane Chen, alleging that Chen promised to give Chiang $5,000,000 to consummate the steel trading transaction but defrauded Chiang causing Chiang to lose the contracts.   See <u>Exhibit 16</u> – *Verified Complaint, <u>Wen Chiang, et al v. Eugene Chen, et al.,</u> Middlesex*

*Superior Court, Civil Action No. 07-2832 and Affidavit in Support of Motion for Ex Parte Real Estate Attachment.*

- Chiang alleged against MBNA that "On December 1, 2006 . . . Chiang informed the MBNA representative that MBNA had damaged his credit badly, damaged his ongoing business that has multimillion dollar contracts, that he was unable to get a financial institution to grant him a loan and that he was unable to expand his business with other multimillion dollar contracts." "These actions by MBNA caused a gross disruption to Chiang's contract sales with customers as well as lost business opportunities involving multimillion dollar projects.  Chiang was also unable to obtain a personal or business loan from financial institutions that damaged and is damaging Chiang's ongoing business involving multimillion dollar project."  <u>Exhibit 13</u> – *Amended Complaint Against MBNA,* ¶¶ 9, 15.

- Chiang alleges against Chase Bank: "These unauthorized charges also caused Chiang's account over the credit limit, Causing additional damages to Chiang's credit file and harm Chiang's credit.  Chiang needs good credit for his family business that has signed for a contract of the value of 95 million dollars."  <u>Exhibit 15</u> – *Amended Complaint Against* Chase, ¶ 14.

                                                            Respectfully submitted,

                                                            VERIZON NEW ENGLAND, INC.

                                                            By its attorneys,

                                                            */s/ William A. Worth*
                                                            */s/ Joshua A. Lewin*
                                                           William A. Worth, BBO #544086
                                                           Joshua A. Lewin, BBO# 658299
                                                           PRINCE, LOBEL, GLOVSKY & TYE LLP
                                                           100 Cambridge Street, Suite 2200
                                                           Boston, MA 02114
                                                           (617) 456-8000

Date:  April 9, 2008


## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on April 9, 2008.

                                                                                 */s/ Joshua A. Lewin*